**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AVANI TRIVEDI,** Individually; **ANKUR SHAH**, Individually; **Avani Trivedi and Ankur Shah as Natural Parent and Guardian of S.S.**, a minor**; Avani Trivedi and Ankur Shah as Natural Parent and Guardian of A.S.**, a minor | **CIVIL ACTION**<br><br>**NO.:** |
| *Plaintiffs,*<br><br>vs. | **JURY TRIAL DEMANDED** |
| **DAVID CALLAN,** individually and as Director and President of Aredelmar S.A. and Playa Dulce Vida, S.A.**; R. SCOTT WILLIAMS,** individually and as Secretary of Aredelmar S.A. and Playa Dulce Vida, S.A.**; HAWK OPPORTUNITY FUND L.P.; AREDELMAR S.A.** d/b/a Arenas Del Mar Beachfront & Rainforest Resort**; PLAYA DULCE VIDA S.A.** d/b/a Arenas Del Mar Beachfront & Rainforest Resort; **DOES 1-100, inclusive,** | |
| *Defendants.* | |

**COMPLAINT – CIVIL ACTION**

Plaintiffs, Avani Trivedi, Individually; Ankur Shah, Individually; Avani Trivedi and

Ankur Shah, as Natural Parents and Guardians of S.S. and A.S., both minors, by and through the

undersigned counsel, bring this action against Defendants, David Callan, R. Scott Williams,

Hawk Opportunity Fund L.P., Aredelmar S.A. d/b/a Arenas Del Mar Beachfront & Rainforest

Resort and Playa Dulce Vida S.A. d/b/a Arenas Del Mar Beachfront & Rainforest Rosert

(collectively, "Defendants"), and in support thereof, make the following allegations:

**NATURE OF THE CASE**

1.      This matter involves individual physical and emotional harm suffered by each

1

Plaintiff during a family vacation at Arenas Del Mar Beachfront & Rainforest Resort during Thanksgiving week, November 2024.

2.      Plaintiffs each suffered harm during their visit to the Arenas Del Mar Beachfront & Rainforest Resort.

3.      The Defendants are jointly and severally responsible for Plaintiffs' injuries because they failed to comply with basic safety standards.  Upon information and belief, mechanical equipment adjacent to Plaintiffs' room emitted dangerous levels of carbon monoxide because of Defendants' actions and inactions, including but not limited to the placement of equipment in a dangerous location which created excess carbon monoxide, failed to maintain proper ventilation of the equipment and instead permitted the noxious fumes to enter Plaintiffs' hotel room causing their injuries.

4.      Most alarmingly, Plaintiffs are not the only guests of the hotel to suffer injuries when staying in the same guest building as well as other rooms on the property.  Even after learning of these dangerous conditions, Defendants failed to remedy them, thereby unnecessarily endangering and causing injury to Plaintiffs.

## **PARTIES**

**Plaintiffs**

5.      Plaintiff, Avani Trivedi, individually (hereafter, "Plaintiff" of "Dr. Trivedi"), is an adult individual, citizen and resident of the State of New Jersey.

6.      Plaintiff, Ankur Shah, individually (hereafter, "Plaintiff" or "Mr. Shah"), is an adult individual, citizen and resident of the State of New Jersey.

7.      Plaintiffs are within the Subpoena power of this Court because they are located and reside within 100 miles of the Federal Courthouse in Philadelphia, Pennsylvania.

8.      Plaintiffs are the Natural Parents and Guardians to S.S., their minor daughter.

9.      Plaintiffs are the Natural Parents and Guardians to A.S., their minor son.

10.     Plaintiff, S.S., is a United States Citizen, resident of New Jersey born on March 14, 2011.  She was thirteen (13) years old at the time she suffered injuries consistent with the inhalation of carbon monoxide.

11.     Plaintiff, A.S., is a United States Citizen, resident of New Jersey born on January 4, 2013.  He was eleven (11) years old at the time he suffered injuries consistent with the inhalation of carbon monoxide.

12.     Plaintiffs were on a family vacation for the Thanksgiving holiday, sharing a room in building five at the Arenas Del Mar Beachfront & Rainforest Resort at the time of their injuries.

**Defendants**

13.     Defendant, David Callan, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania.  David Callan is the Director and President of Aredelmar, S.A. ("Aredelmar"), the owner of the hotel, Arenas Del Mar Beachfront & Rainforest Resort ("HOTEL or Arenas Del Mar"), as well as Playa Dulce Vida, S.A. ("PDV").  Mr. Callan is the sole director with representative power for both Aredelmar and PDV, which own and manage Arenas Del Mar.  Mr. Callan has held this role since approximately 2012.  Upon information and belief, he can grant, revoke or substitute power within the company as is necessary in addition to the management of the bank accounts, both in the United States and Costa Rica.

14.     Defendant, R. Scott Williams, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania. Mr. Williams is and has been the Secretary of Aredelmar, the owner of Arenas Del Mar as well as PDV for many years.

15.     Defendant, Hawk Opportunity Fund L.P. ("Hawk"), is a Pennsylvania Limited Partnership, with its principal place of business located at 159 N. State Street, Newtown, PA 18940.

16.     Hawk is a venture capitalist firm owned and managed by Defendants, David Callan and R. Scott Williams.  Hawk is "designed to allow Callan and Williams to use their expertise in distressed and bankrupt securities to take major positions in those situations they deemed investment worthy. The Hawk Opportunity Fund has over $30,000,000 in assets under management."[1]  Hawk is an investor in Arenas Del Mar.

17.     Defendant, Aredelmar is the owner of Arenas Del Mar, and is a Costa Rican corporation or other legal entity, registered to do business in Costa Rica at the legal address of Avenida Escazu, Lexus Tower, Third Floor, Office 214, San Rafael, Escavu, San Jose Province, Costa Rica.  In 2023, Aredelmar purchased certain assets and liabilities from PDV, which included Arenas Del Mar. Therefore, Aredelmar and PDV are the different owners of Arenas Del Mar.

18.     Upon information and belief, Aredelmar S.A. and Playa Dulce Vida S.A are operated, managed and controlled by David Callan from Pennsylvania.

19.     Playa Dulce Vida owns certain assets and liabilities for Arenas Del Mar Beachfront & Rainforest Resort, and is a Costa Rican corporation or other legal entity, registered to do business in Costa Rica at the legal address of Avenida Escazu, Lexus Tower, Third Floor, Office 214, San Rafael, Escavu, San Jose Province, Costa Rica.

20.     Arenas Del Mar Beachfront & Rainforest Resort is a luxury 5-star hotel in Manuel Antonio, Costa Rica, which officially opened in 2008.

---

[1] https://www.sec.gov/Archives/edgar/data/1498122/000121390018004603/f10k2017_aristafinancial.htm (last accessed July 21, 2026).

21. Plaintiffs are ignorant of the identities of Doe Defendants and therefore sue these defendants by such fictitious names. The Doe Defendants may be individuals, partnerships, or corporations.

22. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, some of the Doe Defendants were the parent, subsidiary, agent, servant, employee, co-venturer, and/or co-conspirator of Defendants, David Callan, R. Scott Williams, Hawk Opportunity Fund L.P., Aredelmar S.A. d/b/a Arenas Del Mar Beachfront & Rainforest Resort, Playa Dulce Vida S.A. d/b/a Arenas Del Mar Beachfront & Rainforest Rosert, and Arenas Del Mar Beachfront & Rainforest Resort, and were, at all times mentioned, acting within the scope, purpose, consent, knowledge, ratification and authorization of such agency, employment, joint venture and conspiracy.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

23. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, some of the Doe Defendants were involved in the service, management, construction, and/or design of the hotel and its appliances.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

24. Upon information and belief, David Callan and R. Scott Williams (collectively,

5

the Individual Defendants), are responsible for the actions of the actual, apparent and/or ostensible agents, servants and employees of Defendants, Aredelmar S.A., Playa Dulce Vida S.A., and Arenas Del Mar Beachfront & Rainforest Resort (collectively, the Hotel Defendants). All such responsibilities are carried out in Pennsylvania.

25.    Upon information and belief, David Callan and R. Scott Williams conduct their business activities through their joint venture, Hawk Opportunity Fund L.P., from Pennsylvania.

26.    Upon information and belief, there existed at all relevant times a unity of interest in actions and ownership between the Individual Defendants, Hawk, and the Hotel Defendants such that independence from, or separation between, the Defendants does not exist and has never existed.  Each of them is an alter ego of the other.

27.    At all relevant times hereto, the Individual Defendants, including principally David Callan, were responsible for the actions of Hawk and the Hotel Defendants.

28.    The Individual Defendants, Hawk, and Hotel Defendants were: (1) engaged in the provision of services at Arenas Del Mar, and were obligated to use the skill, knowledge and care possessed by a reasonable person in performing their duties; and/or (2) acting within the course and scope of Arenas Del Mar's agency and/or role with Aredelmar S.A. and Playa Dulce Vida S.A. and under its right of control over Arenas Del Mar, and purportedly possessed skill and training for the purpose of providing proper services, safety, care, protection and candor to Arenas Del Mar and its invitees and guests, including Plaintiffs; and/or (3) engaged in the financial control over Arenas Del Mar at all material times hereto.

29.    At all times material herein, Defendants were engaged in the hospitality and tourism business through Arenas Del Mar Beachfront & Rainforest Resort.

30.    Defendants, individually and collectively, were responsible for the care and

maintenance of Arenas Del Mar through the actions of their actual, apparent and/or ostensible agents, servants and employees.

**JURISDICTION AND VENUE**

31.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C.S. § 1332 because the matter in controversy exceeds the sum of $75,000.00 and because there is complete diversity between Plaintiffs and Defendants that at all relevant times, have engaged in continuous and systematic business activities in the Commonwealth of Pennsylvania. *See* 28 U.S.C.S. § 1332(a)(1).

**General Personal Jurisdiction**

32.     This Court has personal jurisdiction, pursuant to 42 Pa. C.S. § 5301 *et seq.*, over the Defendants because, at all relevant times, they have engaged in continuous and systematic business activities in the Commonwealth of Pennsylvania.

33.     This Court has general personal jurisdiction over Defendants, David Callan and R. Scott Williams, because they are residents of and domiciled in the Commonwealth of Pennsylvania.

34.     This Court has general personal jurisdiction over Defendant, Hawk Opportunity Fund L.P., because Hawk is registered to conduct business in Pennsylvania and therefore has consented to general personal jurisdiction in Pennsylvania, per 42 Pa. C.S. § 5301 and 42 Pa. C.S § 5322.

35.     This Court also has general personal jurisdiction over the Hotel Defendants because the Hotel Defendants are agents, subsidiaries, and/or the alter ego of David Callan, R. Scott Williams, and Hawk, and thus, for purposes of personal jurisdiction, have inextricable ties to Pennsylvania.

36.    Jurisdiction is proper as to all Defendants because Defendants, David Callan and R. Scott Williams, in all capacities, individually and as Director/President and/or Secretary for the Hotel Defendants, are residents of and principally placed in Pennsylvania.

37.    Additionally, David Callan and R. Scott Williams manage all aspects of the Hotel Defendants, from the Commonwealth of Pennsylvania, including to provide oversight to the Hotel Defendants on the ownership, management, services, design, safety, marketing, promotion, and/or sale of the Hotel Defendants' products.  The Hotel Defendants thus have inextricable ties to Pennsylvania.

38.    The Hotel Defendants regularly conduct business in Pennsylvania through meetings, emails, telephone conversations, as well as through charitable events and donations.

**Specific Personal Jurisdiction**

39.    This Court has specific personal jurisdiction over the Defendants due to the specific business activities related to the Arenas Del Mar Beachfront & Rainforest Resort, including but not limited to the ownership, management, services, design, safety, marketing, promotion, and/or sale of the Hotel Defendants' products that take place in parts of the Commonwealth of Pennsylvania which are located in the Eastern District of Pennsylvania.

40.    The Arenas Del Mar Beachfront & Rainforest Resort, which is where this incident occurred, is marketed, promoted, and sold to consumers in the Philadelphia region within the Eastern District of Pennsylvania.  Such practices have been ongoing since at least 2008.

41.    Defendants have also conducted a nationwide targeted campaign to specifically attract American visitors to the Arenas Del Mar Beachfront & Rainforest Resort.  Those activities have included:

    a.    Arenas Del Mar retained an Ohio-based digital advertising company to

8

position Google advertisements on various Google platforms including Google Search, Google Shopping, Google Maps, and YouTube in the U.S. geographic market, which includes Pennsylvania.

b.  Arenas Del Mar also retained a Florida-based public relations company to advertise the resort to U.S. consumers. This advertising included Instagram posts which explicitly mention U.S. visitors to the resort as well as the availability of promotional materials that could be picked up in Florida. U.S.-targeted advertising via Instagram would include Instagram users located in Pennsylvania.

c.  Arenas Del Mar was advertised in New York at the Skift Global Forum. The forum was attended by major U.S. based hospitality and travel brands including Hilton, TripAdvisor, Delta Airlines, and Expedia. These are all brands with which Pennsylvanians would be familiar.

d.  Arenas Del Mar is featured on travel agency Costa Rican Vacations' website as preferred lodging in the Manual Antonio region of Costa Rica. Costa Rican Vacations was founded by Casey Halloran. Halloran is from Pennsylvania.

e.  Costa Rican's official tourism board, Instituto Costarricense de Turismo ("ITC"), runs campaigns which advertise directly to U.S. travelers. Arenas del Mar is included in these campaigns. One campaign, titled "Save the Americans," was projected on buildings in the U.S. in various cities. It was also promoted by Costa Rican Vacations which advertises Arenas del Mar on their website.

f.  ITC's current campaign, "Only the Essentials," also features Arenas del Mar.

The campaign has targeted major U.S. metropolitan markets including Philadelphia, New York, Miami, Fort Lauderdale, Orlando, Tampa, Boston, Chicago, Los Angeles, San Francisco, Seattle, Dallas, Houston, Atlanta, Phoenix, Detroit, Minneapolis, Austin, and Las Vegas.

g. Arenas Del Mar's website targets U.S. consumers by featuring testimonials of various visitors from the U.S., including visitors from Pennsylvania.

42. Defendants have also conducted targeted campaigns to specifically attract visitors from the Commonwealth of Pennsylvania to the Arenas Del Mar Beachfront & Rainforest Resort. Those activities have included:

a. Arenas Del Mar. The events were advertised directly to Pennsylvanians via Arenas del Mar's website, the website and YouTube channel of a Chester County brewery, and through local organizations like PA Eats, a Pennsylvania non-profit organization. These advertisements included information on how Pennsylvanians could book their visits to the resort.

b. Arenas del Mar has advertised events in support of the National Foundation for Celiac Awareness, a non-profit based in Ambler, Pennsylvania.

c. Upon information and belief, multi-night stays at Arenas Del Mar Beachfront & Rainforest Resort have been sold on multiple occasions as charitable auctions in and around the greater Philadelphia area as donated by Defendant, David Callan. Such actions demonstrate Mr. Callan's authority over Arenas Del Mar from Pennsylvania and the substantial connection between the hotel, the Commonwealth of Pennsylvania and its residents.

43. Venue is proper in the Eastern District of Pennsylvania because Defendants,

10

David Callan and R. Scott Williams, live and work in this District.  *See* 28 U.S.C.S. § 1391(b)(1)&(2).

44.    Venue is also proper in the Eastern District because substantial, specific conduct by the Defendants that gave rise to this claim including the ownership, management, services, design, safety, marketing, promotion, and/or sale of the Hotel Defendants' products originated and occurred in this District.  *See* 28 U.S.C.S. § 1391(b)(2).

## FACTUAL ALLEGATIONS

45.    Plaintiffs incorporate the paragraphs above as if set forth fully herein.

46.    On or about September 2022, the Plaintiffs began exploring the possibility of traveling to Costa Rica for a holiday family vacation from their home in the United States. Plaintiffs Trivedi and Shah had previously traveled to Costa Rica approximately a decade before and felt that it would be a good location for their entire family.

47.    Plaintiff Avani Trivedi, first inquired about a possible itinerary for her family on September 27, 2022, by corresponding with a Travel Consultant from the Costa Rican Vacations Travel Agency.  Dr. Trivedi learned of the agency through some of her closest friends as well as some of her medical colleagues that all used the agency to plan vacations.

48.    Costa Rican Vacations, https://www.vacationscostarica.com/, is a well-known travel agency that boasts the ability to design the "trip of a lifetime" with local experts, tailored travel and super service.  The website states: "we are a licensed, luxury travel agency."

49.    While Costa Rican Vacations put together a possible itinerary, in September 2022, the family never took that specific trip.

50.    On or about June 6, 2024, Dr. Trivedi reconnected with the Travel Consultant from Costa Rican Vacations and asked for an itinerary for November 22-29, 2024.  The agency

11

put together a complete itinerary.

51. The itinerary included multiple adventures and hotels. The final itinerary included a several night stay at Arenas Del Mar Beachfront & Rainforest Resort.

52. Plaintiffs arrived in San Jose, Costa Rica on November 22, 2024. On November 23, 2024, Plaintiffs departed San Jose for a waterfall experience and spent two nights at a resort in La Fortuna.

53. On Monday, November 25, 2024, Plaintiffs departed La Fortuna for Manuel Antonio and Arenas Del Mar Beachfront & Rainforest Resort.

54. Plaintiffs were checked into Room 502A, a second floor room in Building 5 at Arenas Del Mar.

55. Room 502A is one of Arenas Del Mar's luxury suites with views of both the Rainforest and the Pacific Ocean, one of the Ocean Breeze Suites. This room featured a king-size bed, two bathrooms, a living area with a kitchenette, wo twin beds, and a balcony with a hot-tub.

56. Room 502A did not contain carbon monoxide detectors.

57. Plaintiffs' room contained a locked closet with equipment as well as a separate mechanical room outside of the physical confines of the room.

58. Upon information and belief, these mechanical spaces contained various equipment, including hot water heaters, electrical transformers, equipment for the hot-tub and various air-conditioning and water pipes.

59. On the lower level of Building 5, in a central hallway between 501A and 501B, there was a machine/mechanical room that contained various equipment, including hot water tanks for the rooms, hot water heater(s), an electrical transformer and various air-conditioning and water pipes.

60. Upon information and belief, these mechanical spaces did not comply with basic safety standards, including but not limited to improper mechanical ventilation to direct fumes, such as carbon monoxide and others, to a safe external location.

61. Plaintiffs were set to enjoy multiple different activities, including but not limited to a full day waterfall tour and a boat tour to see the shoreline and the many animals of the region while visiting Arenas Del Mar; however, due to the extreme symptoms they experienced, were not able do the planned activities or enjoy the trip Costa Rican Vacations helped plan and for which Plaintiffs paid.

62. Plaintiffs went to their rooms on the evening of November 26, 2024, to rest up for the next day's tour and activity in the National Park, but during the night S.S. woke her mom complaining of a severe headache and low-grade fever. Even with extra electrolyte hydration and Tylenol, S.S. continued to feel worse and became nauseous.

63. S.S. experienced the worst symptoms. Her mother, Plaintiff Avani Trivedi, said that she was disoriented, with severe headaches, eye pain, and required assistance to ambulate at times.

64. S.S. was fearful of the situation; she asked her mother on more than one occasion if she was going to die.

65. A.S. experienced similar symptoms, but not as severe as his older sister. His symptoms started on or about November 27, 2024, during the night with a severe headache, low grade fever and nausea.

66. Plaintiffs would increase hydration with electrolytes and water, some Tylenol and anti-nausea medications, then they would go outside to try to enjoy something about their vacation.

13

67.    After being outside each would begin to feel better within an hour or two. However, for both minor Plaintiffs, symptoms would return during the early morning hours each night they were at Arenas Del Mar.

68.    At some point between November 26, 2024 and November 29, 2024, each Plaintiff experienced similar symptoms of a severe headache, nausea and both children had low-grade fever. Both S.S. and A.S. experienced symptoms for multiple days, with symptoms always beginning in the middle of the night.

69.    Plaintiffs' illness prevented them from participating in their vacation and were very concerning. In fact, the symptoms of the children were such that Dr. Trivedi feared that perhaps the family had contracted an infectious disease such as Zika or Dengue Fever.

70.    On November 28, 2024, there was torrential rain and it forced Plaintiffs to be indoors more. On that day, no one was able to feel any relief from their symptoms as they were confined to Building 5.

71.    Plaintiffs' injuries include nausea, vomiting, debilitating headaches and physical weakness limiting movements at times. Plaintiffs sought medical advice from U.S. medical providers while still traveling in Costa Rica regarding the possibilities of contracting various viral diseases, such as Zika or Dengue Fever. Plaintiffs hydrated heavily with water and supplemental electrolytes as well as treatments with anti-nausea medication, ondansetron, along with Tylenol.

72.    Upon information and belief, there were substandard safety protocols in place in Building 5, which allowed carbon monoxide to enter and contaminate the breathable air, thereby resulting in Plaintiffs suffering physical harm.

73.    Upon information and belief, other guests from the United States, on different

14

occasions, suffered from similar episodes of extreme illness during their vacation at Arenas Del Mar.  In at least one instance, a guest suffered similar symptoms to the Plaintiffs and required medical care.

74.     Less than four months after the Plaintiffs' experience, another family suffered severe illness and one of their family members died while staying in the same Building 5.  An action for civil damages filed by that family is pending before this Court.

75.     As a result of Defendants' disregard for the safety of the Arenas Del Mar guests, Plaintiffs suffered significant harm.

76.     This egregious conduct by Defendants demonstrates a willful and wanton disregard for human life and for the safety of the guests.

77.     Defendants knew or should have known that a failure to properly ventilate a Machine Room could result in significant harm, even death.

78.     Defendants should have had appropriate safety equipment in place to detect and warn of elevated levels of carbon monoxide.

79.     Upon information and belief, sometime after March 28, 2025, and a fatal carbon monoxide event, Defendants placed carbon monoxide detectors in all of the guest rooms at Arenas Del Mar.

80.     If Defendants had taken the appropriate action to properly ventilate the mechanical equipment to prevent contaminated air from going into the guest rooms, or had a safer system in place, Plaintiffs would not have suffered harm.

81.     Upon information and belief, sometime after March 28, 2025, Defendants also upgraded the water heating systems to solar powered systems and changed all backup water heating from gas to electric units to eliminate potential fire or gas leaks.

82. Defendants' failures are the proximate cause of Plaintiffs' injuries.

83. At all material times hereto, Defendants owed the highest duty of care to the Plaintiffs as public invitees and paying guests at the hotel, as more fully described in the factual allegations above, which are incorporated herein by reference.

84. As pled below, Plaintiffs seek the application of the law of the forum state, Pennsylvania, which is also home to Defendants David Callan and R. Scott Williams. However, should this Court determine in a "choice of law" analysis that another jurisdiction's law should apply to this matter, Plaintiff reserves the right to recover under the laws of that jurisdiction.

<u>COUNT I – NEGLIGENCE</u>
**All Defendants**

85. Plaintiffs incorporate the paragraphs above as if fully set forth herein.

86. At all times, Defendants were under a duty to exercise reasonable care in providing and maintaining the five-star resort experience that Arenas Del Mar was promoted to be, which includes the safety and well-being of the guests.

87. Defendants are responsible for the grossly negligent and careless disregard for safety and human life at Arenas Del Mar by their directors, executive committee, agents, servants, workmen, and/or employees under the theory of *respondeat superior*, agency, right of control and/or apparent authority.

88. The general, gross and corporate negligence/systemic failure of Defendants, by and through their actual, apparent and/or ostensible agents, officers, directors including, but not limited to, Arenas Del Mar Beachfront & Rainforest Resort, Aredelmar S.A. and Playa Dulce Vida S.A., consisted of one or more of the following acts or omissions:

    a.    Failure to recognize that Plaintiffs were in danger of toxic exposure;
    b.    Failure to properly and appropriately ventilate the mechanical equipment;
    c.    Failure to recognize, investigate and/or correct a known risk of toxic

16

              exposure;

d.      Failure to adequately monitor for toxic exposure;

e.      Failure to perform the duties owed to a resort guest in a manner that a prudent person or entity would;

f.      Failure to remedy a known risk;

g.      Failure to adequately oversee, maintain and provide a safe environment at Arenas Del Mar;

h.      Failure to install and maintain safety equipment to detect and warn of elevated levels of carbon monoxide;

i.      Recklessly disregarding a known risk of harm which led to physical injury of Plaintiffs;

j.      Failure to act with a duty of care owed to prevent the unnecessary injuries suffered by Plaintiffs.

89.      The conduct of Defendants, individually and collectively, constitutes gross negligence, recklessness, and/or a willful and wanton disregard for the safety and well-being of Plaintiffs.

90.      As a result of Defendants' negligence, Plaintiffs suffered injuries, including but not limited to the following:

a.      Carbon Monoxide poisoning at toxic levels resulting in severe nausea and vomiting;

b.      Paralysis and/or weakness of the legs;

c.      Fear for safety, recovery and well-being;

d.      Severe emotional distress;

e.      Pain and suffering;

f.      Mental anguish;

g.      Helplessness; and

h.      Such other injuries and conditions documented in Plaintiffs' personal accounts and medical records.

91.      Defendants' breaches, failures and negligence, as set forth in this Complaint, increased the risk of harm to Plaintiffs and caused them to suffer harm.

92.      Defendants were aware, or should have been aware, of the foreseeable and substantial risk of injury under these circumstances.

93.      As a direct and proximate result of the negligent and grossly negligent acts and omissions of Defendants, as described herein, Plaintiffs suffered injury and harm.

94.     Defendants are liable in tort to Plaintiffs for their negligent conduct pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

**COUNT II – NEGLIGENCE**
**David Callan, R. Scott Williams, and Hawk**

95.     Plaintiffs incorporate the paragraphs above as if fully set forth herein.

96.     Defendants, David Callan, R. Scott Williams, by and through their venture capital firm, Defendant, Hawk Opportunity Fund L.P., had a duty and obligation to Plaintiffs and patrons of the Hotel Defendants through the financial control asserted by Callan, Williams, and Hawk over the Hotel Defendants at all times material hereto.

97.     Upon information and belief, Defendants, David Callan, R. Scott Williams, by and through their venture capital firm, Defendant, Hawk Opportunity Fund L.P., financially controlled and dominated the Hotel Defendants to the extent that there was no separation amongst these entities.

98.     Defendants, David Callan, R. Scott Williams, by and through their venture capital firm, Defendant, Hawk Opportunity Fund L.P., maintained financial control and domination over the Hotel Defendants that led to the negligent acts and/or omissions pled herein.

99.     As a result of Defendants' negligence, Plaintiffs suffered physical and emotional injuries, including but not limited to the following:

        a.  Carbon Monoxide poisoning at toxic levels resulting in severe nausea and

18

           vomiting;

    b.  Paralysis and/or weakness of the legs;

    c.  Fear for safety, recovery and well-being;

    d.  Severe emotional distress;

    e.  Pain and suffering;

    f.  Mental anguish;

    g.  Helplessness; and

    h.  Such other injuries and conditions documented in Plaintiffs' personal accounts and medical records.

100. Defendants' breaches, failures and negligence, as set forth in this Complaint, increased the risk of harm to Plaintiffs and caused them to suffer irreparable harm.

101. The negligence of Defendants increased the risk of harm to Plaintiffs.

102. Defendants were aware, or should have been aware, of the foreseeable and substantial risk of injury under these circumstances.

103. As a direct and proximate result of the negligent and grossly negligent acts and omissions of Defendants, as described herein, Plaintiffs suffered injury and harm.

104. Defendants are liable in tort to Plaintiffs for their negligent conduct pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

**COUNT III – VICARIOUS LIABILITY**
**All Defendants**

105. Plaintiffs incorporate the paragraphs above as if fully set forth herein.

106. Defendants are liable for the grossly negligent acts or omissions of its actual, apparent and/or ostensible agents, servants and employees under theories of *respondeat superior*,

19

master-servant, agency, ostensible agency and right of control, whose identities include those that knew of or should have known of the faulty ventilation into Building 5, including but not limited to 502A, which caused the injuries to the Plaintiffs.

107.    Defendants are liable to Plaintiffs under a theory of vicarious liability pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

## COUNT IV – BREACH OF WARRANTY (EXPRESS AND IMPLIED)
### All Defendants

108.    Plaintiffs incorporate the paragraphs above as if set forth fully herein.

109.    At all times material herein, Defendants were engaged in the hospitality and tourism business through Arenas Del Mar Beachfront & Rainforest Resort. At all relevant times hereto, Defendants owed a duty of care, protection, security, safety and candor to the guests of Arenas Del Mar Beachfront & Rainforest Resort, including Plaintiffs.

110.    At all times material herein, Defendants owed a duty of reasonable care to provide and maintain the five-star resort experience that Arenas Del Mar was promoted to be, that which Plaintiffs contracted with Arenas Del Mar and that which included the responsibility to provide a safe facility.

111.    Arenas Del Mar was promoted to be a place people can "travel with confidence" and have an unforgettable and luxurious experience, "the only luxury hotel in Manuel Antonio

20

on the beach."[2]

112.    Defendants owed a duty to its guests that Arenas Del Mar was of a certain quality, safe and fit for its intended use and purposes

113.    At all times material herein, Plaintiffs engaged in activities and experiences that are promoted and contemplated by Defendants as part of the experience of being at Arenas Del Mar.

114.    At all times material herein, Plaintiffs engaged in, around and within Arenas Del Mar in the manner that was foreseeable and in accordance with the normal, intended, recommended and/or marketed purposes of Arenas Del Mar.

115.    Defendants made modifications to its facilities that made Arenas Del Mar unsafe and unfit for its intended use and purposes for which it warranted was above any other in the area.

116.    Defendants put economics above the safety of their guests, allowing carbon monoxide to enter 502A contaminating the breathable air.

117.    The harm caused by Defendants' disregard for their responsibilities and duties to its guests far outweighed any benefit Plaintiffs could ever experience, which made Arenas Del Mar unsafe and unfit for its intended purpose as alleged herein.

118.    Arenas Del Mar was more dangerous than the average consumer would expect and more dangerous than other similar facilities.

119.    As a direct and proximate result of Defendants' breach of the express and implied warranties of safety, habitability and fitness for a particular purpose, Plaintiffs have endured irreparable harm, including but not limited to both physical and emotional harm.

---

[2] Arenas Del Mar (last accessed July 21, 2026).

120.    As a direct and proximate result of Defendants' carelessness and negligence, Plaintiffs suffered physical and emotional injuries and will continue to suffer from such injuries.

121.    Defendants are liable in tort to Plaintiffs for their breach of warranty pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

<u>**COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>
**All Defendants**

122.    The previous paragraphs are incorporated by reference as though fully set forth herein.

123.    Defendants' negligence and recklessness caused Plaintiffs' additional injuries outlined more fully herein.

124.    Defendants had a contractual and fiduciary duty to the Plaintiffs, the Plaintiffs were subjected to physical impact as a result of the carbon monoxide poisoning, the Plaintiffs were in the zone of danger and reasonably feared impending physical injury, and Plaintiffs observed tortious injuries to their family.

125.    Defendants are liable in tort to Plaintiffs for their wrongful conduct pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the

jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

## COUNT VI – GROSS NEGLIGENCE / RECKLESSNESS
### All Defendants

126. The previous paragraphs are incorporated by reference as though fully set forth herein.

127. Defendants' aforementioned conduct was aggravated by the kind of malice and grossly negligent disregard for the rights of others, the public, and Plaintiffs, for which the law would allow, and which Plaintiffs will seek at the appropriate time under governing law for the imposition of exemplary (or, punitive) damages, in that Defendants' conduct when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious and reckless disregard to the rights, safety, or welfare of others.

128. Defendants ignored or disregarded the dangerous risks associated with carbon monoxide poisoning, despite modifications to the floor plan and reported history of incidents of illness on the property, in the same building.

129. Defendants' ignorance of the aforementioned risks was ongoing through the trip, including the date(s) of injury beginning on the night of November 26, 2024, continuing through November 29, 2024.

130. Given the Defendants' inherent knowledge and awareness of the risk of carbon monoxide poisoning, and its propensity to cause severe and fatal injuries, Defendants' failure to ensure that the property was safe and habitable constitutes gross negligence, malice, and a reckless disregard for the safety of Plaintiffs and others.

131. Plaintiffs relied on the Defendants to provide a safe and habitable property, and

Plaintiffs suffered as a result of Defendants' failure to do so.

132.    Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

133.    Plaintiffs will seek to assert claims for exemplary damages to the extent available under all applicable laws.

134.    Plaintiffs also allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitutes gross negligence that proximately caused Plaintiffs' injuries.  In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants for their conduct, and which would deter others from engaging in such misconduct in the future.

135.    Defendants are liable in tort to Plaintiffs for their grossly negligent and reckless conduct pursuant to common and statutory law.

**WHEREFORE**, for the above reasons Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally and/or individually for compensatory damages, pain and suffering, punitive damages and such other recoverable damages, in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully demand judgment against Defendants, individually, jointly and severally, and request compensatory damages, together with interest, cost of suit, and all such other relief as the Court deems just and proper as well as:

      a.  For compensatory and general damages in a sum in excess of the jurisdictional minimum of this Court;

      b.  For past and future pain and suffering, mental anguish and diminished

24

enjoyment of life;

c. For pre-judgment and post-judgment interest as is provided by law;

d. For consequential damages in excess of the jurisdictional minimum of this Court;

e. For punitive damages in an amount in excess of any jurisdictional minimum of this Court and in an amount sufficient to impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

f. For attorneys' fees, expenses and costs of this action; and

g. For such further relief as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts and as to all issues.

Dated: July 24, 2026

Respectfully submitted,

*/s/ Michael G. Daly*
Michael G. Daly (PA ID No. 309911)
mdaly@motleyrice.com
Joshua Neuman (PA ID No. 322648)
jneuman@motleyrice.com
Motley Rice LLC
Three Logan Square
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania 19103
Phone: (267) 267-4740; Fax: (267) 267-4759

Joseph F. Rice*
jrice@motleyrice.com
Michael Elsner*
melsner@motleyrice.com
Ann E. Rice Ervin*
ariceervin@motleyrice.com
Donald Migliori*
dmigliori@motleyrice.com
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000; Fax: (843) 216-9635

*Pro Hac Vice forthcoming*